case and we'll take it under advisory. Okay, would the lawyers please approach so that I can argue the case. Introduce yourself to the court. Martin Head on behalf of the plaintiff's appellants. Good morning, Your Honor. Jim Horsten on behalf of the defendants. I'm going to be sending out the reserves in time. I miss your appellant. Thank you, Your Honor. Your Honors, this is an appeal from a lower court decision whereby the trial court dismissed our medical malpractice action based on the 619 motion finding that judicial estoppel applied to the case. It's our contention that the trial court abused its discretion in applying judicial estoppel to this case because the record shows that none of the elements of judicial estoppel were met. None? It's our contention that none were. I mean, some are close, but I think that when you look at the case law and there is a lot of division throughout the case law, that none of the elements were met. The two main issues that I'd like to present here is that the trial court, the main basis for its ruling was looking at the discrepancy in opinion testimony by experts. It's our contention that by suggesting that inconsistencies in expert testimony, opinion testimony, is the same thing as factual discrepancies or testimony, is an abuse of discretion. That's really the crux of this case here, and it kind of applies throughout all the elements. I'm glad you put it in those terms because here's how I see the crux of the case. Let's say you had continued with your 2001 lawsuit in which it was ready for trial. You'd settled against everyone but Dr. Lipkis and his corporation. So at that point, the trial could have gone forward against the remaining defendant who had not settled, or defendants who had not settled. It could have, yes. But do you think under Rule 213F3, you could have changed courses at that point? Or would that rule have prevented different opinions from coming out and to support your, and I think you're entitled to have different theories of your cause of action. But at that point, could you have brought in new experts? And if you couldn't have brought them in in 2001, why should you be able to bring them in in 2007 by filing a new lawsuit? That to me is the crux of the case. Well, I would submit to you that 213F3 would not have prevented testimony going forward. Rule 213 covers both 213 disclosures as well as deposition testimony. Could you have brought in, are you saying that in the trial of the 2001 lawsuit, you could have brought in testimony of Dr. Chanel? No, I'm not suggesting that. He is a separate entire expert. Do you think Dr. Hyman would have been able to change his opinion? Or modify his opinion if you want to be generous? Well, it certainly depends on who's asking the questions. If he's cross-examined by the defense on the hypothetical that was presented to him, then that would allow for that change. The reality is that the plaintiffs never changed their position that Dr. Lipkis and his corporation were negligent both in the first action and the second action, and that he caused the injury, because this is a complicated medical treatment that's ongoing and evolving. The testimony, the record, even from the treaters and other experts in the case, extended that window of causation beyond. So even if we went to trial in the underlying case, testimony would have come in as to opinion testimony and causation that would have extended to Dr. Lipkis. By whom? Some of the other experts have talked about, even against the hospital, that it was an evolving process for bowel and bladder. Even Dr. Skalewski agreed that the bowel and bladder situation continued to evolve even under Dr. Lipkis' care. But I thought the injury was irreversible at some point. And I thought the testimony was that the injury was irreversible as of August 10, was it? Yeah, but this is exactly where the problem... Is that a factual dispute, or is that a factual? No, it's not factual. That's an opinion dispute, and that's exactly the crux of this matter. What is happening here is we're taking opinion testimony, which is based on different specialties, different experiences, different training, and different views of the records. None of the facts have changed in this case from 2001 to 2007. What is completely left out of this is the factual testimony by another doctor, Dr. Lipkis, about what his findings were, which is a very key, important factor here. And he said he conducted a full exam in which he was... Very clear about that. All right, but here's the other question I have for you, because we seem to be tied up on facts versus opinion. And I understand that there are times when opinions are really opinions, and other times when facts... When opinions are close to facts, because that's the way you have it. I would submit that's never the case. It is, no matter what. Hold on, hold on. Let me ask you this. Given the nature of a medical malpractice case, are there ever really facts in that literal sense that you're trying to distinguish from opinion? Absolutely. In medical malpractice cases that are tried. Absolutely, and I've tried many, and I'll submit to you that exactly my point here. What didn't change in this case was the facts. Dr. Lipkis' testimony as to what he did are the facts. Dr. Fisher's testimony about what he found on August 12th, why he discharged the patient, is a fact. That is what he did. That's what every expert, both the defense and the plaintiff's experts, have the ability to look at. If the opinion testimony is fact, then why does the defense expert have a totally different opinion on when the causation? You're right, but here's the difference, as far as I can see. You had Dr. Lipkis' examination of her on the 12th of August, or 14th of August, where he said everything seemed normal. You had that in the 2001 lawsuit. I did. And you didn't really rely on that to impose liability on him. You were challenging that as a factual assertion. And here you are now seeking to rely on that factual assertion by Dr. Lipkis as being the true fact. I disagree with you on that. Because when you say me and the attorneys, as you pointed out, mental health cases are unique because you need expert testimony. That's all we can rely on. But not unique in the sense that their opinion testimony is fact. The reality is the initial disclosures show that it's an open-ended, approximate cause. Sometimes defense attorneys do a little better job of the cross-examination and may lock a witness in to a timeline, because it's all based on opinion. That's all of the element that goes into discovery and determining a case. The plaintiff has an absolute right to voluntarily dismiss her case and then refile that in one year. That's what the statute provides for us. With no substantive motions pending. Let me ask you some questions to get this clear in my mind. Your Honor, unfortunately, the record says I was not the trial attorney on this matter. My understanding is on the eve of trial, as it's worded. I do not know the exact timing before the trial. If it was on the eve of trial, ordinarily in a medical malpractice case, a lawyer prepares against all of the defendants and has his case ready. And when he takes a voluntary non-suit, especially in prior years to when this case was... When he does that, it's because he wants to streamline his case against the remaining defendant. Wouldn't that be true? That would be one of the reasons, absolutely. And in answer to Justice Garcia's question as to could you have got these new opinions and evidence in the first case,  and you had a new witness, and you presented the new witness and gave the other side the opportunity to take their deposition and be apprised of those opinions and obtain another expert, then all that could have been done in the first case, could it not? If the court had allowed it, yes. And courts have done that, have they not? Very rarely, Your Honor. I just wanted to clear up that point. That 213 is something that can be rectified when you change opinions. And the standard is the interest of justice between the parties. And to some extent, that's the very same standard that seems to apply in judicial establishment. It is the interest of the courts, it is to prevent parties from taking inconsistent positions, it is in the interest of justice. Your Honor, I would agree with you exactly. That's the principle of judicial establishment. But that's not what was happening here. From the very beginning... I'm just trying to link 213 to judicial establishment. Absolutely. But the reality is that the plaintiff has the right to dismiss her case in the Supreme Court. And if there was case law to say that based on what you just stated that they couldn't come back in with a new expert, then that would have been cited. You would have had plenty of case law on that before you, and we'd be even discussing another issue. But that's not the case. This is trial strategy... And the trial judge was a very experienced trial judge, and he certainly knew that, but he still chose to invoke judicial establishment as the 2007 lawsuit, which tells us something. But that's why I submit to you he abuses discretion there, because also in the interest of justice, judicial establishment should not be used to interfere with that ability to seek justice. Ms. Milas has also had their own individual rights. And just because they settled with co-defendants, that doesn't prevent them their right from going to a jury trial against Dr. Liffis, who in the 2001 case and in the 2000 case were consistent in their plea against him, that he was negligent and that he caused Ms. Milas's harm. And I just submit just briefly, and then I'll reserve my time, that it's not just even on the issue of opinion testimony, but we submit to you as in our brief, none of the other elements of judicial establishment were met here within the record. There is no reliance on any statements. There is no evidence to show what the initial settlements were based on. There's absolutely nothing in the record, and that was only speculation for the trial court to rely on in order to meet those elements. Thank you, Your Honor. Here, the second element does say that the inconsistent positions have to be taken in a judicial proceedings. Are you saying because the first involved a settlement as opposed to a trial, judicial proceedings element doesn't apply? No, not at all. I acknowledge there's two different cases. It's just that it's opinion testimony. It's not inconsistent factual testimony. I understand, but that's one of the five elements described. But no inconsistent factual elements were brought up in two different judicial proceedings. Good morning. May it please the Court. My name is Jim Horstman. Melissa Dockage, my co-counsel, and I represent the defendants. Counsel has talked mostly about judicial estoppel. There is, of course, another basis for upholding the judgment. That's res judicata. Judicial estoppel is a pretty simple and basic rule. To quote one of the opinions that we cited in our brief, if you prevail in suit one represented that A is true, you're stuck with A in all later litigation arising out of those events. Their position, I think, is that in their 2001 lawsuit, they said A is true, but also B is true. And now that A is settled, we want to proceed on theory B. And why isn't that permissible? I don't think that was the case. So are you relying on the allegations in the complaint to say that B was never alleged? I'm relying on the allegations of the complaint, the 213s, the deposition testimony. Judicial estoppel looks to the inconsistency. And the plaintiffs clearly on two critical points offered inconsistent testimony and 213 disclosures. One of the issues was, when did the plaintiff develop caudal sinus syndrome? The other one is, when was the last date on which she could have had surgery to avoid permanent neurological injury? The 2001 case, their testimony showed that the plaintiff developed caudal sinus syndrome when she was in the hospital. In the 2007 case, they abandoned their experts, dumped Dr. Chiodo and Stern, and instead presented witnesses to testify that the caudal sinus syndrome didn't develop until after she left the hospital when she was already in the nursing home. Let me ask you this question. What was the crux of the allegation in the 2001 lawsuit against Dr. Lipkis and his corporation? Given his testimony that he performed a full exam on the 14th of May, did he indicate that she had suffered any kind of lower body lack of control? The allegation was that he didn't perform that examination, and that if he did, he was negligent in failing to see that she had the developed caudal sinus syndrome. And they were looking for damages arising from his negligence that would have been over and over again. I think that's why they dismissed Dr. Lipkis, realizing that based on the testimony that they've produced in the 2013s, they've got nothing against Dr. Lipkis. So they voluntarily dismiss him, get a whole new panel of  then they go back to the court. of experts and come in with a totally new theory. So you're claiming ambush? More than that. Dr. Lipkis was sued over 11 years ago. They settled based on the theory that the plaintiff didn't develop caudal sinus syndrome, that she developed it while she was in the hospital, and that surgery had to be performed while she was in the hospital. They sued him in the 2007 case, and everything has shifted. All of the expert testimony has shifted from in the hospital to the period of when she's in the nursing home. I think they did settle with Abington for a relatively minor amount. Let me ask you this. Justice Gordon wrote Sarah's terminal and described the limitation on the application of judicial estoppel on opinion testimony and opinions given by witnesses. Isn't that what we're dealing with here? Opinions by these individuals? And therefore, judicial estoppel shouldn't be used to throw out a case when it's simply the opinions that have changed. And giving a liberal construction to their complaint, the complaint pretty much stays the same. How do we get around Sarah's terminal? It's the nature of the opinion in Sarah's terminal. In Sarah's terminal, the opinion related to the value of certain property, which when the expert initially gave an opinion was right then, but then values change. It's the nature of markets. Let me ask you this. If we're writing, hypothetically speaking, if we're writing a decision to distinguish that opinion testimony in Sarah's terminal versus this opinion testimony in this case, how do we do that? How do we say this is different opinion testimony than that opinion testimony in Sarah's terminal? The opinion testimony in this case dealt with experts telling us what happened in the past. When an injury occurred, when the last  case of the plaintiff relies on, the opinions went to questions that naturally are qualitative in nature, but they naturally change. One is the value of property, the changes with market. Caballero is an expert's opinion as to the rehabilitative potential of a defendant who maybe not have been a good case early, but later on he was a better hope, so the opinion naturally changed. In Grawler, it was the nature and extent of the claimant's disability. So when the expert initially gives the opinion, I don't think that this person has good prospects. That's good for that time, but several years later, you have a reexamination of the claimant, and an expert may find, based on the facts that they've changed, a different opinion. Are we talking about failure to diagnose here? Is that what we're talking about? As to Dr. Litkus? Yeah. And the thing has changed as to when that failure to diagnose occurred. Isn't that what we're talking about? In other words, in the first case, they said that the failure to diagnose occurred in the hospital, and in the second case, you're saying the failure to diagnose happened in the nursing home. Basically, yeah. Okay. Yeah. What about the element that physicians must be taken under oath? And do we have the service terminal suggested that that's a burden, or that's a showing that must be made with regard to the party, not with regards to the party witnesses? Well, here, as Your Honor mentioned, it's a medical malpractice case. All the material facts have to be established through expert testimony, plaintiff here executed her obligations under 213 F3 by her answers to interrogatories and presenting the witnesses. She can't disown the testimony of her own expert witnesses in a medical malpractice case. Their words are her words. So it's judicial estoppel is not a limitation on the witnesses, that's for sure. But in a case like this, the plaintiff is establishing her facts through the expert testimony, and she can't disown it. So it is her position. And under, obviously everybody knows, 213 is an obligation on the party. So that's the link with judicial estoppel. This is her statement under 213. This is what my theory of the case is. This is what the evidence will be. So what you're saying is that in a medical malpractice case, somebody can't change their theories? Is that what you're telling me? I'm saying that they can't change their theories when they've already made a recovery on the basis of one set of facts. Well, their recovery was based on a settlement, not on a trial, wasn't it? That's true. But judicial estoppel doesn't require a trial or a judicial determination. All that's required is that a party assert a certain position and derive a benefit  What did it mean to have a settlement on the eve of trial? It was on the eve of trial, but I don't have the specifics. It was right up I'm sorry for that lack of precision. Race judicata, if I may briefly. We also assert that the judgment may be upheld it's a claim splitting version of race judicata. And it's based really on two Supreme Court cases. One is Hudson. Hudson says when you have a final determination of a part of a case and a plaintiff voluntarily dismisses the rest of the case, then the whole thing is merged into a final determination barring relitigation of any part of it. In this case, Hudson applies because we clearly have a hospital, an Abington nursing home being and plaintiff voluntarily dismissing Dr. Lifkus in his corporation. So under Hudson, they have no right to refile against Dr. Lifkus. The important thing is, as the court has noted, plaintiff had a full and fair opportunity to litigate her claim against Dr. Lifkus in the 2001 case. She chose not to. Hudson is pretty good for us. It's even better here because this is because here we had Abington being dismissed with prejudice in the 2001 case. Abington was only in the case on respondeat superior allegations. What's in the record to support that link between Abington and Dr. Lifkus? Well, I'm looking primarily to their complaint. That's how they held, those are the allegations against Abington. And when they dismiss with prejudice the principal under Towns v. Yellow Cab, they also, as a matter of law, have dismissed Dr. Lifkus. So again, under Hudson, but even better, under Towns, they're not allowed to come back and file a new claim against Dr. Lifkus. And you believe that we as a reviewing court could affirm on res judicata even though the circuit court judge did not address that? Wouldn't it be better to send it back if we disagree on the application of judicial estoppel and ask the trial court to proceed, at which point he could certainly grant a dismissal based on res judicata if he determined that it barred a lawsuit. But why should we do it? Well, review is de novo. It's a matter of judicial estoppel. I understand that part, but as a review court, we don't want to go beyond the scope of review that we've been given. And the scope of review is the application of judicial estoppel. Well, I think judicial estoppel is certainly the clearest issue here. That's the one that the judge relied on. I do have one caveat, though, with respect to res judicata. I have to make a disclosure of adverse authority. And in plaintiff's brief, he argued that a dismissal based on a settlement is not good grounds for res judicata. In response, we cited a March 2011 First District case to the exact contrary. It said, no, dismissal based on a settlement is good grounds for res judicata. What neither party saw was there's an opinion from this division holding the other way. It was back in March of 2011, and nobody caught it before. It's Goodman v. Hanson. Justice Gordon wrote that opinion. 408, Gillap, III, 285. And Goodman v. Hanson holds against our cases. We had cited Nelson v. Chicago Park District, which is another 2011 First District case. But in Goodman v. Hanson, this court said, we realize there's a split in authority, but we find that a dismissal based on a settlement is not a good basis for res judicata. I would ask the court, obviously I'm ethically bounded to bring that up and I'd want to anyway. I would point out one thing, that if the court goes there, if the court breaches that, I would ask that we have an opportunity to brief the issue. Particularly because in Goodman v. Hanson, the court points out, this is an issue that the parties didn't raise themselves. This was an instance where the court sua sponte, picked up this issue. So it wasn't briefed there, and it hasn't been briefed here, so I'm asking if the court gets to that point, that we be allowed to brief that. And if I may, just briefly, one of the cases that Goodman v. Hanson cites is another First District case that shows that the majority in modern view is that a dismissal based on a settlement is a good basis for res judicata. So in Goodman v. Hanson, the court knowingly was taking a minority view. It hadn't been briefed. A minority view and 50 years of experience in doing it. Okay. But you see, one of the problems that I see is in Goodman v. Hanson and even in Hudson v. City of Chicago, those are not medical malpractice cases. Medical malpractice cases are unique cases. There's a statute that we have, and everything about it is much more unique than other cases. And in fact, medical mail can't go forward without at least some indication that it would be supported by expert witness. Isn't there an obligation that an affidavit be appended to the complaint that it has a ballot in good cause of action of medical negligence? There's no doubt that med mail cases are a lot different. But I think on the Hudson point, I think that it's fair to say that Hudson and Towns are going to apply to any variety of cases. We're talking about merger of causes of action and finality. If there are no further questions, Your Honor, I thank you for your time and ask the court to affirm. Petal? Your Honor, just a couple quick notes on the judicial estoppel. The reference is made that plaintiffs dumped a bunch of their experts. Well, that's commonplace when you settle with those defendants that you don't rename the experts that you disclosed against them. There was no dumping other than the only witness we abandoned was Dr. Skaletsky. Another issue that keeps coming up is the fact that this settlement was based on Skaletsky's causation testimony. That's absolute speculation. There is no basis in any of the record of what the basis of the settlement was. We know what Dr. Skaletsky testified to and certainly we can make an inference as to what arises from that opinion testimony. Your Honor, Dr. Skaletsky did not testify to any standard of care opinions, did he, against any of the defendants. If there was no standard of care opinions, none of these defendants would have entered into settlement negotiations. And if it was based on Dr. Skaletsky's testimony, then why is Abington settling the case? Because they're in the same boat as Lipkis, correct? So that doesn't seem plausible that his testimony was the basis of this settlement. Are they in the same boat as Lipkis? Absolutely. Based on the theory of the defense. Now, what I submit to is that there was enough testimony in the record that would bring it into theory, Abington, and that's why they engaged in settlement negotiations. But in addition to it, the hospital lost some key records. They were facing another major issue with this. But the bottom line is, no record, no stipulation, no affidavit, no submission to the court, no evidentiary hearing was ever determined the basis of the settlement. Let me ask you this question regarding what would proceed if we send it back down for a trial on this. How do you think the jury would, because I assume a lot of this 2001 lawsuit would come in. I think they retained some of the same experts. Absolutely. How do you think the jury would perceive a lawsuit of this type that the plaintiff is now claiming that the injury really happened later than she first claimed, or at least that supported the settlement that was reached? Well, I'll answer that in two parts. One, I don't think that should be a basis for us to determine what the fact finder would determine on this case. Isn't that the basis for judicial estoppel? Well, no, I don't think so, Your Honor, because I think we have a fundamental right to proceed to that trial. They have their safeguards in place. But the courts have a fundamental right to protect the appearance of or protect the best interest of the courts, whether it's to find justice. I agree with you 100%, Your Honor, but if you look at all the cases that have come up in this issue, it's based on factual testimony where Harvey has for instance, in one hearing, they'll state the light was green. And then the next one, it was red. But there were complete odds for their factual testimony in order to derive a secondary benefit. Let me ask you something. What bothers me about this case, and I look at it from a practical point of view, the defense prepares this case based on what the plaintiff tells them in their complaint. The plaintiff tells them that the failure to diagnose occurred at the hospital. And your experts say it occurred at the hospital. So the defendant, they work up their case, they get their experts based on what the medical records show at the hospital. Now in the new case, you're saying that this failure to diagnose occurred in a nursing home. See? And it's almost very similar to having like a new cause of action at a new place. See? So now, they're not prepared for that because you didn't tell them that. These are the basis in which we figure out what is just and what is fair. Fair or not, Your Honor, but I would disagree with your statement. They knew it was a failure to diagnose from the beginning, from the very first complaint and initial 213 disclosures, and that's been consistent, that Dr. Lipkis failed to diagnose this while at Abington. Those allegations have been in the complaint from the beginning. The discovery throughout for that first litigation all centered around both employees at Abington, nurses who made misfindings, who reported issues to Dr. Lipkis. They were on notice for that. They actually disclosed their experts in line with that defense, even in the second case. As a matter of fact, they took an expert and adopted a co-defendant's expert from the first case, who even had a different theory of how early approximate cause ended, as opposed to their own expert in the underlying case. So they did a very similar maneuver by adopting a different expert. Well, what was your first expert? Where did he say the failure to diagnose occurred? He said on the 14th, when he felt that he didn't do an appropriate exam, which is at Abington. Okay, but that was at the time you were at the hospital? No, at Abington. Dr. Lipkis was never involved with the hospital. That's asked to Dr. Lipkis. I think Justice Gordon was also asking when was the crucial failure to diagnose in order to prevent the injury that the plaintiff sustained. But that's what I submit to you, that with expert opinion testimony, it can vary depending on the witness. Just as the defendant's expert had very different views of the expert. But you don't question that in the 2001 lawsuit, your principal allegation was that the failure to diagnose occurred in the underlying cause. I absolutely do disagree with that. You're talking about approximate cause as opposed to the standard of care. The liability was consistent throughout that Dr. Lipkis failed. Because Dr. Lipkis was never involved in the first part. I understand, but I'm talking about your overriding complaint against all defendants and not just focusing in on Dr. Lipkis. The 2001-2007 lawsuit focuses in on Dr. Lipkis and maybe your principal theory is now more refined, but originally everything was focused on Glenbrook. I would submit to you it was every defendant, Chuck. That's why Abington was involved in that settlement as well. Just briefly move on to the race to Dukata. It's our position they waived it. If you don't accept the waiver, I understand that the court feels there's a basis in the record. Clearly under prior opinions, never raising that issue for three years, being involved in discovery, even going through motions in Lemonade and never raising that issue has been found to be an acquiescence and thus a waiver of that. But furthermore, the key distinction in every case in Hudson and everything else that's been involved in this makes it very clear that it's the defendant where a dispositive ruling and final order has been ruled in their favor on a particular account, then race to Dukata comes into play. Dr. Lipkis has never had a dispositive motion that was ruled on until this one that we're appealing from. Nothing in the 2001 action. There was nothing pending. They were simply voluntarily dismissed, and they want to piggyback and ride on dismissal orders that were made pursuant to settlement, not involuntary dismissals. And I think the law is very clear on that, that they don't have the right to bootstrap onto that issue. Thank you. Thank you very much. You gave us a very interesting case and we'll take it under advisement. Court is adjourned. Thank you.